IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 16-2452

_____

In re:  Gene L. Brown, Jr., Petitioner

_____


RESPONSE TO APPLICATION TO FILE SECOND OR SUCCESSIVE PETITION


_____


STEPHEN A. ZAPPALA, JR.
*District Attorney*


RUSHEN R. PETTIT, *
*Assistant District Attorney*
PA I.D. NO. 87791

Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, Pennsylvania 15219-2489
(412) 350-4377


*Counsel of Record

**IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

In re:  Gene L. Brown, Jr.                    No 16-2452

**Response to Application to File Second or Successive Petition**

AND NOW, comes the Commonwealth of Pennsylvania the Allegheny County District Attorney's Office, and files the within Motion for Extension of Time, and in support thereof, avers as follows:

<u>ISSUE</u>

Petitioner filed an Application to File a Second or Successive Petition Pursuant to 28 U.S.C. § 2254. This Honorable Court issued an Order directing the District Attorney's Office ("the Commonwealth") to file a Response to Petitioner's Application by July 20, 2016. An extension of time was granted, thereby ordering that the Response be filed by August 19, 2016.

Specifically, the Commonwealth must address whether Petitioner has established a *prima facie* case that newly-discovered evidence "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense."

1

<u>FACTUAL SUMMARY</u>

The Superior Court summarized the facts of the case, in its February 6, 2015 Opinion as follows:

> The Commonwealth presented the following evidence *inter alia*: on July 31, 2000, at approximately 6:00 p.m., Darryl Massie (Victim) was sitting on steps on Cresswell Street in the St. Clair Village housing project with some friends, including Daron Freeman. Petitioner was walking on a nearby pathway; and when Petitioner saw Victim, Petitioner began shooting at him. Petitioner initially fired 3 or 4 shots, reloaded and then fired an additional 13 to 17 shots. During the shooting, Phil Peterson, one the Victim's friends, began firing shots from a nine-millimeter Glock in Petitioner's direction to scare him off. Upon Mr. Peterson's firing, Petitioner fled the scene and entered his cousin's vehicle. Petitioner told his cousin Petitioner shot Victim in the leg. Victim sustained two bullet wounds to the chest, which killed him. The Commonwealth's expert in forensic pathology testified that Victim did not sustain any gunshot wounds to his legs, calves, or buttocks.
>
> Investigators recovered 13 spent shell casings from the crime scene. Police found 3 of the shell casings, including the casings from the 2 bullets recovered from Victim's body, in the pathway of the shots fired by Petitioner. Police recovered the remaining 10 casings, fired from Mr. Peterson's firearm, in two different locations on and around Cresswell Street. Significantly, the Commonwealth's expert in firearms testing opined that the bullets which killed Victim could not have been fired from Mr. Peterson's gun.
>
> Relevant to this appeal, Mr. Freeman testified at trial that he was sitting with

Victim on the day of the shooting. When Mr. Freeman noticed Petitioner walking toward them, Mr. Freeman stood up and started to walk away because he suspected trouble. Mr. Freeman thought Petitioner and Victim would fight due to a prior incident between them, but Mr. Freeman did not know the details of what had transpired between the two men. Mr. Freeman admitted he was concerned for Victim's safety based on this prior incident. When Mr. Freeman began to walk away, he heard gunshots. Mr. Freeman did not see Victim carrying a gun on the day of the shooting.

Petitioner testified at trial that he shot Victim in self-defense. Petitioner explained that, two weeks before the shooting, Petitioner was leaving a bar when Victim walked up to Petitioner, pulled out a gun, and began patting Petitioner's pocket in an attempt to rob him. Petitioner maintained the men struggled for a bit, but ultimately Petitioner was able to disarm Victim and turn over Victim's weapon to the police. Petitioner insisted that, on the day of the shooting, he was on his way to a birthday party for his mother and just happened to see Victim on the steps. Petitioner claimed he was carrying his mother's firearm that day for protection after the attempted robbery. When Petitioner walked up to Victim and his friends, Petitioner alleged Victim stood up and said, "What are you going to do now? Where is the police at now, you little bitch?" Petitioner explained Victim had his hands in his pants and reached into his mid-section area under his shirt, so Petitioner suspected Victim might have a gun. Petitioner then fired three shots toward the ground to scare Victim away. Upon hearing additional shots fire, Petitioner ran away. Petitioner adamantly maintained that he fired no more than 3 shots near Victim, and that if petitioner did fire at Victim, Petitioner fired only at Victim's legs. Petitioner conceded he did not see Victim with a gun on the day of the shooting. Petitioner claimed

3

> there was actually a third shooter, but
> Petitioner refused to disclose the identity
> of this alleged third shooter.

(A copy of the Opinion is attached hereto as Commonwealth Exhibit "1").

Additional relevant facts include: One of the bullets hit Mr. Massie's left lung, went through his heart, hit the right lung, and came to rest under his right nipple (TT 296). The second bullet fractured Mr. Massie's ninth rib, passed through his diaphragm, entered the abdominal cavity, and perforated his spleen, kidney, gastro-esophageal junction, liver, and colon (TT 298). Mr. Massie collapsed on Creswell Street and died shortly thereafter (TT 85, 118).

Police investigators found a total of thirteen spent casings in the area (TT 127-128, 129, 138-139). These casings were fired by two weapons only and were found in two distinct groupings (TT 127-129, 138-139, 317, 323).

Group A, three casings found in the pathway area where Petitioner fired his shots, came from one handgun most probably a Lorcin, but definitely not a Ruger (TT 317, 318, 321, 322, 343). Two of those three shots were the fatal bullets found in the victim's body (TT 326-328). The other ten casings, those coming from Phil Peterson's Glock, were found in two spots on and around Creswell Street (TT 138-139). Dr. Robert Levine, a ballistics and firearm expert with the Allegheny County Forensic Laboratory,

testified that the two bullets that entered the victim's body were not fired from Mr. Peterson's weapon (TT 329).

Dr. Abdulrezak Shakir, a forensic pathologist who performed the autopsy on Mr. Massie's body, testified that there were no wounds on the victim's legs, calves, or buttocks (TT 295).  The only external wounds were the two entry gunshot wounds in the victim's chest (TT 293, 295).

STANDARD OF LAW

In order to prevail, Petitioner must meet the requirements of 28 U.S.C.A. §2244(b), which sets forth the conditions for granting permission to file a second or successive petition. It provides:

> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless-
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B) (i) **the factual predicate for the claim could not have been discovered previously through the exercise of due diligence**; and
>
>> (ii) **the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.**
>
> (3) (A) Before a second or successive application permitted by this section is filed in the district court, the

applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

(D) The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion.

(E) The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.

(4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

28 U.S.C.A. §2244(b).

## ARGUMENT

Petitioner contends that he has new evidence, thereby invoking subsection (B)(i). Specifically, that Commonwealth witness Darron Freeman has recanted part of his trial testimony and has provided "new" testimony which bolsters or supports Petitioner's self-defense theory.

At trial, Freeman testified that when he noticed Petitioner walking toward him and Victim Massie, he stood up and started to walk away and then heard gunshots. (*See* Factual Summary). Now, according to an Affidavit, dated February 27, 2014 and purportedly from Mr. Freeman, Freeman contends that before he walked away, he heard Victim Massie curse at Petitioner and saw Massie put his hand in the waistband of his pants. After walking away, he heard shots.

## Due Diligence

The Commonwealth submits that Petitioner fails to demonstrate that the factual predicate of this claim could not have been previously discovered through the exercise of due diligence. Petitioner contends that Freeman came forward with the new information after his wife died. However, this assertion alone does not establish that this information could not have been exposed by due diligence.

No Reasonable Factfinder

The Commonwealth initially notes that it has reservations regarding the validity and/or truthfulness of Freeman's affidavit. The Affidavit is not notarized so it is unclear if the statements made therein are actually attributable to Mr. Freeman. Moreover, recantation testimony has historically been viewed with great suspicion. *Landana v. Raffertey*, 856 F.2d 569, 572 (3d Cir. 1988).

Nevertheless, pursuant to §2244(b), we must precede under the presumption that the statements contained in the Affidavit have been proven true. So, the relevant inquiry is whether the new evidence, when viewed in context of all the evidence, clearly and convincingly establishes that no reasonable factfinder would have found Petitioner guilty of the underlying offense.

Freeman's new testimony only adds inconsequential facts - that Freeman saw Massie curse and put his hand on his waistband. Freeman does not recant his trial testimony that he did not see Massie carrying a gun on the day of the shooting. In fact, the physical evidence proved that Massie was unarmed. (*See* Exhibit "1" at p. 12). Casings found at the scene were fired by two weapons and found in two distinct groups (TT 127-129, 138-139, 317, 323). Ten of the casings came from Peterson's Glock and were not the bullets which killed Massie (TT 138-139). The three other

9

casings were found in the pathway were Petitioner fired his shots and came from one handgun (TT 317-322, 343). Two of these shots were the fatal bullets found in Massie's body (TT 326-328).

Moreover, when considered in context of Petitioner's own trial testimony, the new evidence becomes even less persuasive. Petitioner testified that he fired three shots toward the ground to scare Victim. He insisted that he only fired at Massie's legs. (*See* Factual Summary). However, the testimony established that Massie was shot in the chest - the lung and ribs (TT 296-298). There were no wounds on his legs, calves or buttocks (TT 295).

Simply put, the new evidence – when considered with the evidence as a whole - does not clearly and convincingly establish that **no reasonable factfinder** would have found Petitioner guilty of First-Degree Murder. The instant Application fails to make a *prima facie* showing that Petitioner satisfies the requirements of 28 U.S.C.A. §2244(b). As such, the Application must be denied.

WHEREFORE, the Commonwealth respectfully requests the instant Application to File a Second or Successive Petition be DENIED.

Respectfully submitted,

STEPHEN A. ZAPPALA, JR.
DISTRICT ATTORNEY

BY    /s Rushen R. Pettit
ASSISTANT DISTRICT ATTORNEY
PA I.D. 87791

2015 PA Super 24

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GENE LEONARD BROWN | |
| Appellant | No. 1018 WDA 2014 |

Appeal from the PCRA Order May 28, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014850-2000

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

OPINION BY GANTMAN, P.J.:                    **FILED FEBRUARY 06, 2015**

Appellant, Gene Leonard Brown, appeals from the order entered in the Allegheny County Court of Common Pleas, which dismissed his second petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with criminal homicide in connection with the shooting death of Victim.  Appellant proceeded to a jury trial on June 5, 2001.  At trial, the Commonwealth presented the following evidence, *inter alia*: on July 31, 2000, at approximately 6:00 p.m., Victim was sitting on steps on Cresswell Street in the St. Clair Village housing project with

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

COMMONWEALTH'S
**EXHIBIT**
1

some friends, including Daron Freeman. Appellant was walking on a nearby pathway; and when Appellant saw Victim, Appellant began shooting at him. Appellant initially fired three or four shots, reloaded, and then fired an additional thirteen to seventeen shots. During the shooting, Phil Peterson, one of Victim's friends, began firing shots from a nine-millimeter Glock in Appellant's direction to scare him off. Upon Mr. Peterson's firing, Appellant fled the scene and entered his cousin's vehicle. Appellant told his cousin Appellant shot Victim in the leg. Victim sustained two bullet wounds to the chest, which killed him. The Commonwealth's expert in forensic pathology testified that Victim did not sustain any gunshot wounds to his legs, calves, or buttocks.

Investigators recovered thirteen spent shell casings from the crime scene. Police found three of the shell casings, including the casings from the two bullets recovered from Victim's body, in the pathway of the shots fired by Appellant. Police recovered the remaining ten casings, fired from Mr. Peterson's firearm, in two different locations on and around Cresswell Street. Significantly, the Commonwealth's expert in firearms testing opined that the bullets which killed Victim could not have been fired from Mr. Peterson's gun.

Relevant to this appeal, Mr. Freeman testified at trial that he was sitting with Victim on the day of the shooting. When Mr. Freeman noticed Appellant walking toward them, Mr. Freeman stood up and started to walk

- 2 -

away because he suspected trouble. Mr. Freeman thought Appellant and Victim would fight due to a prior incident between them, but Mr. Freeman did not know the details of what had transpired between the two men. Mr. Freeman admitted he was concerned for Victim's safety based on this prior incident. When Mr. Freeman began to walk away, he heard gunshots. Mr. Freeman turned around and saw Victim holding his chest and trying to run away. Mr. Freeman did not see Victim carrying a gun on the day of the shooting.

Appellant testified at trial that he shot Victim in self-defense. Appellant explained that, two weeks before the shooting, Appellant was leaving a bar when Victim walked up to Appellant, pulled out a gun, and began patting Appellant's pocket in an attempt to rob him. Appellant maintained the men struggled for a bit, but ultimately Appellant was able to disarm Victim and turn over Victim's weapon to the police. Appellant insisted that, on the day of the shooting, he was on his way to a birthday party for his mother and just happened to see Victim on the steps. Appellant claimed he was carrying his mother's firearm that day for protection after the attempted robbery. When Appellant walked up to Victim and his friends, Appellant alleged Victim stood up and said: "What are you going to do now? Where is the police at now, you little bitch?" Appellant explained Victim had his hands in his pants and reached into his mid-section area under his shirt, so Appellant suspected Victim might have a gun.

- 3 -

Appellant then fired three shots toward the ground to scare Victim away. Upon hearing additional shots fire, Appellant ran away. Appellant adamantly maintained that he fired no more than three shots near Victim, and that if Appellant did fire at Victim, Appellant fired only at Victim's legs. Appellant conceded he did not see Victim with a gun on the day of the shooting. Appellant claimed there was actually a third shooter, but Appellant refused to disclose the identity of this alleged third shooter.

On June 7, 2001, the jury convicted Appellant of first-degree murder. The court sentenced Appellant on June 20, 2001, to life imprisonment. This Court affirmed the judgment of sentence on March 19, 2003, and our Supreme Court denied allowance of appeal on February 17, 2004. *See Commonwealth v. Brown*, 828 A.2d 394 (Pa.Super. 2003), *appeal denied*, 577 Pa. 676, 843 A.2d 1236 (2004) (unpublished memorandum). On July 9, 2004, Appellant timely filed a PCRA petition, which the court denied on April 4, 2007. This Court affirmed the denial of PCRA relief on September 23, 2009, and the Supreme Court denied allowance of appeal on March 9, 2010. *See Commonwealth v. Brown*, 986 A.2d 1249 (Pa.Super. 2009), *appeal denied*, 605 Pa. 692, 990 A.2d 726 (2010) (unpublished memorandum).

On March 26, 2014, Appellant filed *pro se* the current PCRA petition, claiming he had obtained "newly discovered evidence." In his petition, Appellant maintains Mr. Freeman failed to tell the "whole story" at trial. Appellant contends Mr. Freeman has since come forward to elaborate on his

- 4 -

testimony, stating that, on the day of the shooting, Mr. Freeman heard Victim curse at Appellant, and saw Victim reach into his waistband and stand up.[2] Mr. Freeman then stood up and walked away before the shots fired. Appellant claims Mr. Freeman did not reveal this information sooner because he was married to Victim's cousin. Mr. Freeman's wife has since passed away, so Mr. Freeman felt he should come forward. Appellant insists Mr. Freeman's "new evidence" would have bolstered Appellant's claim of self-defense. Appellant further avers Mr. Freeman relayed this information to Appellant's wife on February 11, 2014; and Appellant became aware of Mr. Freeman's "new" information on February 28, 2014.

On May 5, 2014, the court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing, based in part on Appellant's failure to attach to his PCRA petition a declaration from Mr. Freeman attesting to his proposed testimony or a declaration from Appellant's wife stating the date she became aware of Mr. Freeman's testimony. Appellant responded to the court's Rule 907 notice, alleging he had attached Mr. Freeman's declaration to his PCRA petition (and providing proof in the form of a receipt from a prison guard and signature from a mailroom bookkeeper). Appellant attached another copy of Mr. Freeman's declaration to his response, as well as a declaration from his wife indicating she learned of Mr. Freeman's

---

[2] Appellant does not claim Mr. Freeman saw Victim with a firearm.

testimony on February 16, 2014.[3]  On May 28, 2014, the court dismissed

Appellant's petition as untimely.  Appellant timely filed a notice of appeal on

June 25, 2014.  On June 30, 2014, the court ordered Appellant to file a

concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(b).  Appellant timely filed a Rule 1925(b) statement on July 15, 2014.

Appellant raises the following issues for our review:

> THE PCRA COURT ERRED IN DISMISSING APPELLANT'S
> SECOND PETITION AS UNTIMELY FILED BECAUSE IT
> DETERMINED THAT HE FAILED TO MEET THE
> [REQUIREMENTS] OF THE AFTER-DISCOVERED EVIDENCE
> EXCEPTION TO THE PCRA WHERE:
>
> A.    THE [WITNESS' DECLARATION] WAS TIMELY
> FILED WITH APPELLANT'S SECOND PCRA PETITION
> IN ACCORDANCE WITH THE MAILBOX RULE, AND
>
> B.    APPELLANT PROVIDED THE PCRA COURT WITH
> AN ADDITIONAL COPY OF THE WITNESS'
> [DECLARATION] AND EVIDENCE OF TIMELY
> DELIVERING HIS SECOND PETITION AND
> [DECLARATION] TO THE DEPARTMENT OF
> CORRECTIONS WITH HIS TIMELY FILED RESPONSE
> TO THE COURT'S NOTICE OF INTENT TO DISMISS.
>
> THE PCRA COURT ERRED IN DISMISSING APPELLANT'S
> SECOND PETITION BECAUSE [A DECLARATION] FROM HIS
> WIFE WAS NOT ATTACHED TO HIS PETITION WHEN
> APPELLANT ATTACHED HER [DECLARATION] TO THE
> TIMELY-FILED RESPONSE TO THE COURT'S NOTICE OF
> INTENT TO DISMISS.
>
> [THE] PCRA COURT ERRED IN DISMISSING [APPELLANT'S]

---

[3] Appellant does not contend that his wife's declaration constitutes "newly discovered evidence," but uses it to demonstrate when Appellant learned of Mr. Freeman's statements.

SECOND PCRA PETITION WITHOUT A HEARING BECAUSE IT FOUND THE PETITION TO BE PATENTLY FRIVOLOUS AND LACKING SUPPORT IN THE RECORD WHEN [APPELLANT] ALLEGED FACTS THAT, IF PROVEN, WOULD ENTITLE HIM TO RELIEF IN THE FORM OF A CONVICTION OF A LESSER CHARGE.

THE PCRA COURT ERRED IN DISMISSING [APPELLANT'S] SECOND PCRA PETITION BECAUSE IT FOUND THAT NO FURTHER PURPOSE WOULD BE SERVED BY CONDUCTING AN EVIDENTIARY HEARING WHEN [APPELLANT] ALLEGED FACTS THAT, IF PROVEN, WOULD ENTITLE HIM TO RELIEF IN THE FORM OF A CONVICTION OF A LESSER CHARGE.

THE PCRA COURT ERRED IN DETERMINING THAT APPELLANT WAS NOT ENTITLED TO APPOINTED COUNSEL TO REPRESENT HIM IN HIS SECOND PCRA PETITION.

(Appellant's Brief at 4-5).

As a prefatory matter, the timeliness of a PCRA petition is a jurisdictional requisite. *Commonwealth v. Robinson*, 12 A.3d 477 (Pa.Super. 2011). A PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, **a**

**petition must allege and the petitioner must prove**:

> (i)  the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).  Additionally, a PCRA petitioner must present his claimed exception within sixty days of the date the claim first could have been presented.  42 Pa.C.S.A. § 9545(b)(2).  "As such, when a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the [PCRA] court has no power to address the substantive merits of a petitioner's PCRA claims."  ***Commonwealth v. Gamboa-Taylor***, 562 Pa. 70, 77, 753 A.2d 780, 783 (2000).

The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence.  ***Commonwealth v. Bennett***, 593 Pa. 382, 395, 930 A.2d 1264,

1271 (2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. *Commonwealth v. Carr*, 768 A.2d 1164, 1168 (Pa.Super. 2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. *Commonwealth v. Breakiron*, 566 Pa. 323, 330-31, 781 A.2d 94, 98 (2001); *Commonwealth v. Monaco*, 996 A.2d 1076, 1080 (Pa.Super 2010), *appeal denied*, 610 Pa. 607, 20 A.3d 1210 (2011). This rule is strictly enforced. *Id.* Additionally, the focus of this exception "is on the newly discovered **facts**, not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Marshall*, 596 Pa. 587, 596, 947 A.2d 714, 720 (2008) (emphasis in original).

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. *Bennett, supra* at 393, 930 A.2d at 1270. "This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of 'after-discovered evidence.'" *Id.* Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii); *Bennett, supra*. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be

eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, *inter alia*, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

*Bennett, supra* at 395, 930 A.2d at 1272 (internal citations omitted) (emphasis in original). Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim.[4] *Id.* at 395, 930 A.2d at 1271.

Instantly, the court sentenced Appellant on June 20, 2001. Our Supreme Court denied allowance of appeal on February 17, 2004.

---

[4] To obtain relief on a substantive after-discovered-evidence claim under the PCRA, a petitioner must demonstrate: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *See, e.g., Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586 (2007); *Commonwealth v. D'Amato*, 579 Pa. 490, 856 A.2d 806 (2004). The substantive merits-based analysis is more stringent than the analysis required by the "new facts" exception to establish jurisdiction. *See Bennett, supra* at 395-96, 930 A.2d at 1271-72.

- 10 -

Appellant's judgment of sentence became final on May 17, 2004, upon expiration of the time to file a petition for writ of *certiorari* with the United States Supreme Court. **See** U.S.Sup.Ct.R. 13. Thus, Appellant's current petition, filed on March 26, 2014, is patently untimely. **See** 42 Pa.C.S.A. § 9545(b)(1). Additionally, Appellant did not acknowledge the untimeliness of his petition or allege in his petition any exception to the PCRA time-bar. **See** 42 Pa.C.S.A. § 9545(b)(1)(i-iii). Instead, Appellant maintained he had "newly discovered evidence" and was entitled to relief under 42 Pa.C.S.A. § 9543. **See** 42 Pa.C.S.A. § 9543(a)(2)(vi). Appellant's reliance on Section 9543 as a basis for asserting an after-discovered-evidence claim under the PCRA, however, did not suspend Appellant's initial obligation to establish jurisdiction by alleging and proving (a) the existence of facts that were unknown to him and (b) his exercise of due diligence in discovering those facts. **See** 42 Pa.C.S.A. § 9545(b)(1)(ii); ***Bennett, supra.*** Consequently, as presented, Appellant failed to plead and prove in his petition any exception to the PCRA's time-bar. **See** 42 Pa.C.S.A. § 9545(b)(1)(i-iii).[5]

Nevertheless, based on Appellant's allegations, the PCRA court treated Appellant's petition as attempting to invoke the "new facts" exception set forth under Section 9545(b)(1)(ii). In dismissing the petition as untimely, the court explained:

---

[5] On appeal, Appellant similarly advances arguments on the merits of his underlying after-discovered-evidence claim.

- 11 -

In response to the Notice of Intent to Dismiss, [Appellant] submitted [declarations] from his wife, Malik James, and from Daron Freeman, the eyewitness who testified at trial. [Mr.] Freeman's [declaration] states that just before the shooting, he saw [Victim] reach toward his waistband, but then he looked away and did not see the shooting. In his filings, [Appellant] avers that this supports his claim of self-defense. [Ms.] James' [declaration] reiterates [Mr.] Freeman's [declaration] and states that she became aware of this evidence on February 1[6], 2014 when [Mr.] Freeman called her without provocation.

At trial, [Appellant] testified that he was involved in an altercation with [Victim] several days prior to the shooting. [Appellant] also testified to pulling out his gun and shooting [Victim] on the public street, even though he could have run away. Although [Mr.] Freeman now claims not to have seen [Appellant] shoot [Victim], [Appellant] has already admitted he did so. Although [Mr.] Freeman now claims to have seen [Victim] reaching towards his waistband, the physical evidence proved that [Victim] was unarmed. **The new "evidence" contained in [Mr.] Freeman's [declaration] does not change any analysis of the facts and there is no reasonable argument that it would compel a different verdict. As such, [Appellant] has failed to satisfy the requirements of the after-discovered evidence exception.**

Inasmuch as [Appellant] has failed to satisfy the requirements of the after-discovered evidence exception to the time limitation provisions of the Post Conviction Relief Act, his Petition was properly classified as untimely. ...

(PCRA Court Opinion, filed September 2, 2014, at 4-5) (emphasis added).[6]

The court's reasoning makes clear it conflated the distinct requirements of

---

[6] To the extent Appellant complains the court dismissed his petition for failure to attach the required declarations to his petition, the record belies that contention. **See id.**

the "new facts" exception per Section 9545(b)(1)(ii) and the merits-based "after-discovered evidence" analysis relevant to Section 9543(a)(2)(vi). **Compare** 42 Pa.C.S.A. § 9545(b)(1)(ii) **with** 42 Pa.C.S.A. § 95439(a)(2)(vi). **See also Bennett, supra**.

Even if we accept the PCRA court's position that Appellant meant to invoke the "new facts" exception at Section 9545(b)(1)(ii), our examination of Appellant's petition confirms he failed in his efforts. Significantly, Mr. Freeman sat on the steps with Victim just before the shooting. Appellant knew Mr. Freeman was present on the steps when Victim allegedly cursed at Appellant and reached in his waistband. Thus, at the time of the shooting and going forward, Appellant would have had reason to believe Mr. Freeman overheard Victim's alleged remarks and saw Victim stand up and place his hands in his waistband. Mr. Freeman testified at trial for the Commonwealth. At no point during Appellant's cross-examination of Mr. Freeman, however, did Appellant attempt to elicit from Mr. Freeman testimony regarding whether Mr. Freeman heard Victim curse at Appellant prior to the shooting or whether Mr. Freeman saw Victim stand up and reach toward his waistband. Further, Mr. Freeman's reluctance to come forward with the purported new information sooner, due to his marriage to Victim's cousin, does not explain why **Appellant** was unable to discover this information earlier with the exercise of due diligence. Notably, Appellant makes no claim that he attempted to contact Mr. Freeman at any point since

- 13 -

trial to determine whether Mr. Freeman had additional information regarding the day of the shooting. *See Breakiron, supra*; *Monaco, supra*; *Carr, supra*. *Compare Bennett, supra* (holding petitioner alleged sufficient due diligence, for purposes of Section 9545(b)(1)(ii) time-bar exception, where petitioner provided description of steps he took to ascertain status of his case, including writing to PCRA court and Superior Court). Thus, Appellant failed to meet the "new facts" exception to establish jurisdiction. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii); *Bennett, supra*. Absent proper jurisdiction, the PCRA court lacked authority to address the substantive merits of Appellant's after-discovered-evidence claim.[7] *See Gamboa-Taylor, supra*.

Based upon the foregoing, we hold that a facially untimely PCRA petitioner attempting to raise a substantive after-discovered-evidence claim must first establish jurisdiction by pleading and proving an exception to the PCRA time-bar. Additionally, the "new facts" exception set forth at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim. Rather, to establish jurisdiction under Section 9545(b)(1)(ii), a petitioner must allege and prove (a) the existence of facts that were unknown to him and (b) his exercise of due diligence in

---

[7] Due to our disposition, we need not address Appellant's claim seeking appointment of counsel. *See* Pa.R.Crim.P. 904(D) (stating on second or subsequent PCRA petition, when unrepresented defendant satisfies court that defendant is unable to afford or otherwise procure counsel **and** evidentiary hearing is required, court shall appoint counsel to represent defendant).

discovering those facts.    Appellant failed to satisfy this exception.

Accordingly, we affirm the order dismissing Appellant's petition as untimely.

***See generally Commonwealth v. Lee***, 947 A.2d 199 (Pa.Super. 2008),

*appeal denied*, 602 Pa. 676, 981 A.2d 218 (2009) (explaining appellate court

can affirm trial court's decision on any basis).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/6/2015

<u>PROOF OF SERVICE</u>

I hereby certify that the following party will be served by First Class Mail:

    Gene L. Brown Jr.
    Inmate # ES1188
    SCI Pittsburgh
    P.O. Box 99991
    Pittsburgh PA 15233

                    <u>/s Rushen R. Pettit</u>
                    ASSISTANT DISTRICT ATTORNEY
                    PA I.D. 81166

Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA 15219

(412) 350-1993

Dated:  August 4, 2016